UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.                             Case No:   2:16-cv-441-FtM-38MRM

KINGDOM LEGACY GENERAL
PARTNER, LLC and MARK C.
NORTHROP,

        Defendants.
_____/

## OPINION AND ORDER[1]

    This matter comes before the Court on review of Defendants, Kingdom Legacy General Partners, LLC ("KLGP") and Mark C. Northrup's Motion to Dismiss (Doc. #16) filed on August 5, 2016.  Plaintiff, Securities and Exchange Commission ("SEC") responded in opposition on August 29, 2016.  The matter is ripe for review.

## BACKGROUND

    This case involves allegations of widespread securities fraud.  The SEC is the federal agency responsible for enforcing federal securities laws.  The SEC alleges that Northrup is a licensed CPA, the owner and CEO of Kingdom Legacy Fund, LLC ("KLF"), and the controlling alter-ego of KLGP.  (Doc. #1 at 3-4).  KLGP is a fund management entity that controls the selection and overall allocation of KLF's assets.  (Doc. #1 at 3).

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

KLF is a hedge fund with a portfolio of different investment funds.  (Doc. #1 at 1-5).
According to the Complaint, from December 2010 to September 2015, the Defendants
raised at least $10,000,000.00 from at least 40 investors for the KLF fund.  (Doc. #1 at
1).  Through KLF, Defendants allegedly siphoned at least $3,000,000.00 in undisclosed
fees from investors.  (Doc. #1 at 1).

Specifically, the Complaint alleges that through various avenues including the
internet, through the mail, and in person at church gatherings, Defendants employed a
number of misstatements and omissions to entice individuals into investing in KLF.  (Doc.
#1 at 5-9).  Through its website, KLF made false representations regarding the profitability
of the fund and the extent of involvement by Northrup's family.  It stated that "[m]ost
people invested in the stock market need the market to go up for them to make money.
With us . . . Bull or Bear . . Who Cares?  It doesn't matter the direction of the stock market
. . . or what the economy does."  (Doc. #1 at 5).  It further stated that "[o]ur fund is one big
pool of money.  If the fund makes 2% for the month, we all make 2% for the month.  If the
fund loses 1% for the month, we all lose 1% for the month."  (Doc. #1 at 7).  Finally, the
website stated that "[Northrup's] family is the largest investor in the fund, which means
nobody is going to watch your money any closer than we do."  (Doc. #1 at 9) (capitalization
omitted).  The Complaint alleges these representations are false, that Defendants profited
when the fund lost money, and that the Northrup family was never the largest investor in
KLF. (Doc. #1 at 7, 9).

Moreover, a brochure that KLF distributed stated that each of KLF's principles and
employees had personal investments in the fund, and that they "only ma[d]e money when
[the investors] ma[d]e money."  (Doc. #1 at 7).  The Complaint alleges this statement is

false, as there were occasions where investors lost money and Defendants still managed to profit for themselves.  (Doc. #1 at 7).

Usually at the time of investment, either in person or by mail, the investors were also provided with a Private Placement Memorandum ("PPM").  (Doc. #1 at 5).  The PPM detailed the investment the individuals had undertaken, and the types of KLF share classes, including KLF Conservative Series A ("KLF Conservative") and KLF Aggressive Series B ("KLF Aggressive").[2]  (Doc. #1 at 5).  The PPM also claimed that investors in KLF shares received advantages over others, such as diversification, experienced management, investor limited liability and administrative convenience.  (Doc. #1 at 6).  The PPM continued by claiming that the trade size and volume of trading "may enable [KLF] to obtain lower commission rates than would otherwise be available to smaller portfolios invested independently in the strategies applied by [KLF]."  (Doc. #1 at 6).  Importantly, the Complaint alleges that the PPM also contained misrepresentations and omissions on administrative fees.  (Doc. #1 at 6).  The PPM explicitly stated that investments in KLF funds were only subject to a 2% annual asset management fee on any profits made.  (Doc. #1 at 6).  The Complaint alleges this representation was false, and in actuality, Defendants charged investors 40% or 50% in administrative fees on monthly trading profits.  (Doc. #1 at 6-7).

Finally, the Complaint alleges that a letter was received by at least one investor claiming that Northrup was a "mathematical guru" and that he had "increased each investor's account by double digit returns every year since he started managing hedge funds in 2000."  (Doc. #1 at 8).  These promotions failed, however, to mention Northrop

---

[2] In September 2011, KLF began offering a third type of share, KLF Ultra Conservative A-10 ("KLF A-10").  KLF offered no written materials for KLF A-10.  (Doc. #1 at 2).

was forced to dissolve a previous hedge fund in 2008 because of tremendous losses, and that in 2009, Northrop and his previous hedge fund management company were sued under the Kansas Uniform Securities Act and a default judgment was entered against them. (Doc. #1 at 8).

Because of all of the above and with knowledge of an ongoing SEC investigation, the Complaint alleges that Northrop sent letters to all KLF investors in September 2015. (Doc. #1 at 9).  These letters urged all KLF investors to sign an enclosed addendum "to try and eliminate any confusion any of our investors may have" concerning KLF's fee structure, and that he "should have made clear these returns to you, the investor, are after all fees." (Doc. #1 at 9) (capitalization omitted).  With that, the addendum also disclosed the 50% fees for KLF Conservative and 40% fees for KLF Aggressive.  (Doc. #1 at 9-10).

## STANDARD

### A.  RULE 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a Complaint for failure to state a claim upon which relief can be granted.  In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to, or referenced in, the complaint, and matters judicially noticed.  *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).  The Court must accept all factual allegations in a plaintiff's complaint as true and take them in the light most favorable to the plaintiff.  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  Conclusory allegations, however, are not entitled to a presumption of truth.

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001).

The Court employs the *Twombly–Iqbal* plausibility standard when reviewing a complaint subject to a motion to dismiss. *Randall v. Scott*, 610 F.3d 701, 708 n.2 (11th Cir. 2010). A claim is plausible if the plaintiff alleges facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Marsh*, 268 F.3d at 1036 n.16. Thus, "the-defendant-unlawfully harmed me accusation" is insufficient. *Iqbal*, 556 U.S. at 677. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal modifications omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

**B. RULE 12(b)(1)**

Under Federal Rule of Civil Procedure 12(b)(1), a district court may dismiss a case if subject matter jurisdiction is not present. Fed. R. Civ. P. 12(b)(1). Motions to dismiss for lack of subject matter jurisdiction attack jurisdiction facially and/or factually. See *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir.2009); *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n. 5 (11th Cir.2003). Where, as here, a defendant raises a factual attack on subject matter jurisdiction, irrespective of the sufficiency of the pleadings, the district court may look outside the four corners of the complaint to determine if jurisdiction exists. See *Eaton v. Dorchester Dev., Inc.*, 692 F.2d

727, 732 (11th Cir.1982); *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997). In factual attacks, the presumption of truthfulness afforded to a plaintiff under Rule 12(b)(6) does not attach. *See Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir.1999) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990)). Since the Court's power to hear the case is at issue in a Rule 12(b)(1) motion, courts are free to weigh evidence outside the complaint (e.g., affidavits, declarations, and deposition testimony). *See Carmichael*, 572 F.3d at 1279; *Eaton*, 692 F.2d at 732.

## DISCUSSION

Defendants' Motion to Dismiss is multifaceted. First, they argue that the Complaint should be dismissed because it does not meet the particularity threshold of Rule 9(b). Second, Defendants present evidence and an alternative theory they claim undermines the Complaint's securities fraud allegations. Third, Defendants argue that the Complaint fails to sufficiently support the statutory elements of securities fraud in Counts II, III, IV, V, VI, VII, VIII, IX, X and XI. Fourth, Defendants argue the relief sought in the Complaint is prohibited. Fifth, they argue that the Court lacks subject matter jurisdiction over the claims in the Complaint because they do not involve interstate commerce. Last, Defendants argue that some of the actions contemplated by the Complaint are time-barred. The Court will address each argument below.

## A.   PARTICULARITY

Defendants first aver the Complaint should be dismissed because it does not meet the pleading threshold imposed on fraud claims by the Federal Rules of Civil Procedure. Securities fraud allegations are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which requires that a party "state with particularity the

circumstances constituting fraud."  Normally, Rule 9(b) is satisfied where the complaint details:

> (1)  precisely what statements were made in what documents or oral representations or what omissions were made, and
>
> (2)  the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and
>
> (3)  the content of such statements and the manner in which they misled the plaintiff, and
>
> (4)  what the defendants obtained as a consequence of the fraud.

*Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotations omitted).  But, while details must be alleged with particularity, allegations related to mindset are subject to a lower standard.  In that regard, the Rule allows that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  *Id.*

Rule 9(b) "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior."  *Id.* at 1370-71 (internal quotations omitted).  However, while the Rule imposes a heightened pleading standard, the Eleventh Circuit has cautioned that "Rule 9(b) must not be read to abrogate [R]ule 8 . . . and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of [R]ule 9(b) with the broader policy of notice pleading."  *Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985).  In furtherance of this objective, requisite particularity has been found in a pleading that did not deal in exact

specifics but still presented enough description to sufficiently apprise a defendants of the allegations against it.  *See Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) (list containing fraud allegations as well as nature and subject of statements found to meet the Rule 9(b) threshold, even though precise words were not alleged); *see also Brooks*, 116 F.3d at 1371 ("alternative means are also available to satisfy the rule."). While "[i]t is certainly true that allegations of date, place or time [are traditional indicia of particularity] . . . nothing in the rule requires them." *Seville Indus. Mach. Corp.*, 742 F.2d at 791.

Against this backdrop, Defendants make two arguments claiming the Complaint is not pled with particularity: first, that the SEC has not included the requisite detail regarding the alleged actions at the heart of their claims, and second that the Complaint is nothing more than a puzzle pleading.  As to the first inquiry, the Complaint alleges that the Defendants made numerous false statements and omissions in the PPM, on their website, through letters, in brochures, and in person regarding excessive and undisclosed fees, allocation of profits, the history and past performance of the fund principals, and the extent of the Northrup family's investments.  Defendants argue this effort is not enough. They contend that the interests of particularity are not satisfied because the Complaint does not state who saw the website, received the letter and brochure, when they did so, or whether they relied on the individual source of information.

To be sure, the Complaint does not list with exact temporal specificity the moment that each misrepresentation or omission was made.  Even so, when the allegations are taken as true, it is clear the misrepresentations and omissions *were* made to potential and actual investors through a number of different channels, and that they were made on

an ongoing basis from December 2010 to September 2015.  It is well established that "[b]ecause this is a civil enforcement action brought by the SEC, reliance, damages, and loss causation are not required elements [when alleging a securities fraud claim]." *See SEC v. Morgan Keegan & Co.*, 678 F.3d 1233, 1244 (11th Cir. 2012).  The Court finds the Complaint adequately describes the nature and subject of the alleged misrepresentations and omissions, and has thereby alerted the Defendants to the "precise misconduct with which they are charged." *Brooks*, 116 F.3d at 1370.

Second, Defendants argue that the Complaint is not pled with particularity because it is a puzzle pleading, and therefore should be dismissed.  To support their argument, Defendants point to a case from the District of Arizona that states that puzzle pleadings are those that "require the defendant and the court to match the statements up with the reasons they are false or misleading." *SEC. v. Fraser, No. CV-09-00443-PHX-GMSC, 2009 WL 2450508, at *14 (D. Ariz. Aug. 11, 2009)*.  This concept is similar to that of a shotgun pleading.

It appears that while the Eleventh Circuit has never taken a position on so-called puzzle pleadings, it has weighed in regarding shotgun pleadings.  In *Frantz v. Walled*, 513 F. App'x 815, 820 (11th Cir. 2013), the court largely echoed *Fraser's* logic, holding that "[a] shotgun pleading incorporates every antecedent allegation by reference into each subsequent claim for relief or affirmative defense.  This Court has repeatedly condemned shotgun pleadings. This is because, from a shotgun pleading, it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."

The Complaint here is not a shotgun pleading.  It is clear that every antecedent allegation is not incorporated into each subsequent claim.  To the extent that the

Complaint incorporates factual allegations into its claims, each of the allegations within the specified paragraph range relate to each securities fraud count.  Taking these factors into account, the Court has no trouble discerning the allegations intended to support each claim.

The Complaint similarly cannot be characterized as a puzzle pleading.  The nature of the allegations within the Complaint are such that the alleged misstatements and omissions are listed under separate headings with the reasons they are false or misleading.  It is plainly evident the Complaint contains sufficiently particularized counts allowing a reader to match up alleged misstatements and omissions with their explanatory counterparts.  Though Rule 9(b) must elicit the specificity to provide notice, it is not designed to mandate volume. Defendants need not reproduce each allegation for each count, it is enough that falsity is alleged once and then incorporated.

## B.   ALTERNATIVE THEORY

Defendants next dispute the factual allegations of the Complaint by individual pages of the PPM and a single page of KLF's Operating Agreement.  They argue the documents show that each of the fees assessed by the Defendants through KLF were explicitly disclosed to investors prior to utilization. They argue the Complaint should be dismissed because the contents of the documents render the Complaint's allegations "confusing at best."  To the extent the Court elects to review the documents, it is unpersuaded.

If a court considers matters that are outside a pleading on a motion to dismiss for failure to state a claim, the motion must be treated and disposed of as if it were a motion for summary judgment under Rule 56.  *See* Fed. R. Civ. P. 12(d).  "A document attached

to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Slakman v. Admin. Comm. of Delta Air Lines, Inc.*, No. 16-10572, 2016 WL 4978353, at *1 (11th Cir. Sept. 19, 2016).

Here, because the Complaint explicitly alleges that the PPM contained both misstatements and omissions, the individual pages of the PPM are central to the Complaint. The SEC has not disputed the document's content. The Court may properly consider the PPM pages when deciding on the merits of Defendants' Motion.  The review, however, yields no fruit.  While the Defendants argue that the PPM informed investors that KLF would take deductions for administrative expenses, they fail to claim that the allegedly siphoned fees were, in actuality, the same with those expenses.  As such, the PPM pages are inconsequential.

The Court's decision on the KLF Operating Agreement is much simpler. Defendants have made no attempt to explain why the terms of the Operating Agreement, which ostensibly governs the relationship between KLF's owners, and not its investors, would be central to the SEC's claims.  Absent such a showing, the Court cannot make a finding of centrality.  As a result, the Court will disregard the presented page from the Operating Agreement.

## C.   STATUTORY PLEADING SATISFACTION

Defendants next argue that the Complaint fails to detail a basis for scienter in relation to its claims.  The Court will handle each Count individually.

### 1.  SECTION 10(b) AND RULE 10b-5

Defendants argue that Counts V, VI, and VII of the Complaint – claims respectively sounding in violations of Rule 10b-5(a), Rule 10b-5(b) and Rule 10b-5(c) – should be dismissed because they do not adequately support allegations of scienter. Section 10(b) of the Securities Exchange Act of 1934 renders it "unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe. . . . " 15 U.S.C. § 78j(b); *see also SEC v. Zandford*, 535 U.S. 813, 819 (2002). Section 10(b), though, requires an implementing statute.  This assistance comes in 17 CFR § 240.10b–5 ("Rule 10b–5").  *See Zandford*, 535 U.S. at 819.

Rule 10(b)-5 states that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> > (a) To employ any device, scheme, or artifice to defraud,
> >
> > (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> >
> > (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 CFR § 240.10b–5(a)-(c).  From a substantive perspective, Rule 10b-5 is coextensive in scope with that of Section 10(b).  *See Zandford* 535 U.S. at 816 n. 1.  Therefore, the Court will employ "Rule 10b-5" to refer to both the statutory provision and the rule.

To lodge a viable securities fraud claim under Rule 10b-5, a plaintiff must allege that defendants made material misstatements or omissions as to which they had a duty to detail,[3] or used a fraudulent device, with scienter, in connection with the purchase or sale of securities. *See SEC v. Roanoke Tech. Corp.,* No. 6:05CV1880ORL31KRS, 2006 WL 3813755, at *2 (M.D. Fla. Dec. 26, 2006); *see also Ross v. Bank South, N.A.*, 885 F.2d 723, 728 (11th Cir.1989)).  Scienter has been defined as "a mental state embracing intent to deceive, manipulate, or defraud." *Aaron v. SEC*, 446 U.S. 680, 686 n. 5 (1980). Notably, "[a] showing of severe recklessness satisfies the scienter requirement." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

Here, Defendants argue that because the Complaint does not allege opportunity, motive or how the Defendants profited, and that it is therefore devoid of support from which scienter can be derived.  The Court disagrees.  While motive, opportunity or actual profit were not specifically alleged, their existence may be readily ascertained from the facts as provided. It is plainly evident that personal monetary gain would be a motive in the alleged siphoning of money from KLF investors.  Similarly, it is obvious that an opportunity for monetary gain through impropriety presented itself through the advertisement and offering of shares in multiple KLF share classes that Defendants controlled completely.  Last, the Complaint explicitly alleges that Defendants siphoned $3,000,000.00 to themselves from KLF funds without proper notice to investors, thereby reinforcing the inference of both motive and opportunity while simultaneously settling how Defendants profited.  (Doc. #1 at 1).

---

[3] Disclosure of a detail or fact omitted is required "when necessary to make statements made, in light of the circumstances under which they were made, not misleading."  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011).

The concurrent and diverse methods of enticement to potential and actual investors, including through the internet and the mail, and the undisclosed skimming of funds through administrative fees naturally lend themselves to a showing that the actions were undertaken knowingly, or in a state of severe recklessness and as part of a common scheme.  This is exactly what the SEC has alleged in relation to Rule 10b-5(a).

Furthermore, to the extent that Defendants argue that the SEC must allege more than motive or opportunity to show scienter, they are incorrect.  The one case they provide to support this point, *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 362 (6th Cir. 2001), is inapposite here because that case utilized standards set by the Private Securities Litigation Reform Act ("PSLRA").  The PSLRA imposes a heightened pleading standard above that of Rule 9(b) for securities fraud cases between private parties.  See 15 U.S.C. § 78u-4; *see also Richard Thorpe & Darrel Weisheit v. Walter Inv. Mgmt., Corp.*, 111 F. Supp. 3d 1336, 1352 (S.D. Fla. 2015).  The SEC, however, is not a private party and therefore the PSLRA does not apply in this case. *See* 15 U.S.C. § 78u-4; *see also S.E.C. v. Betta*, No. 09-80803CIV-MARRA, 2010 WL 963212, at *5 (S.D. Fla. Mar. 15, 2010).  With this in mind, the Court has no trouble at this stage finding that the actions undertaken by the Defendants were knowing or reckless, thereby satisfying the scienter requirement.

Likewise, there is sufficient support for the allegation of scienter in Count VI of the Complaint, which alleges Defendants violated Rule 10b-5(b) by providing "untrue statements of material facts" and omissions of material facts to investors.  Specifically, the Complaint alleges that the PPM failed to disclose a number of monthly administrative charges on KLF trading profits, and that their website also falsely characterized the

profitability of the KLF fund as to the Defendants, as well as the extent of Northrup's family's stake in same.  Moreover, the Complaint alleges that Defendants misrepresented both KLF's and Northrup's background and past performance to investors.   These allegations must be taken as true.  When doing so, as the Court has noted above, it becomes difficult to avoid the glaring inference that Defendants actions were intentional or severely reckless.  This is exactly what was pled here.  Scienter is satisfied as it relates to Count VI.

Finally, the Complaint also successfully alleges scienter as it relates to Rule10b-5(c) in Count VIII, which alleges that Defendants' fraudulent conduct constituted a course of business.   In the same way as they supported allegations of a common scheme involving knowing or reckless conduct, the allegations of the ongoing material misstatements and omissions in Defendants' PPM, their brochure, and their website, naturally dovetail with the allegation they were produced in an act, practice or course of business that operated as a fraud upon a person in connection with the sale of securities. Again, this is exactly what the Complaint alleges.  Hence, as it applies to Counts V through VII, Defendants' Motion is denied.

## 2.  SECTION 17(a)

Like they did regarding claims sounding in violations of Rule 10b-5, Defendants argue that Counts II-IV, which sequentially allege violations of Section 17(a)(1)-(3) of the Securities Act of 1933 ("Section 17(a)"), should be dismissed because the Complaint does not contain factual allegations that would support a finding of scienter or negligence. Section 17 is codified at 15 U.S.C. § 77q. This provision states that:

> (a) It shall be unlawful for any person in the offer or sale of
>      any securities (including security-based swaps) or any

security-based swap agreement (as defined in section 78c(a)(78) of this title) by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly

> (1) to employ any device, scheme, or artifice to defraud, or

> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a)(1)-(3).  A plain reading of the statute reveals that it largely mirrors that of Rule 10b-5.  The similarities do not stop there, though, as a claim under Section 17(a) requires "substantially similar proof" as a claim under Rule 10b–5, except there is no scienter requirement for claims brought under Section 17(a)(2) or Section 17(a)(3).  *SEC v. Monterosso,* 756 F.3d 1326, 1334 (11th Cir. 2014).  Here, the Complaint contains claims that Defendants violated Section 17(a)(1), as well as Section 17(a)(2) and Section 17(a)(3).

Given the similarity in the statutes, and by virtue of the Court's findings of scienter in relation to Rule 10b-5(a)-(c), the Court finds that the Complaint's allegation of scienter in Count II as it pertains to violations of Section 17(a)(1) is also sufficiently supported. Because the Court finds that the SEC has sufficiently supported their scienter allegations on their Rule 10b-5 claims, and because the Complaint explicitly alleges that Defendants negligently violated Section 17(a)(2) and 17(a)(3), the minimum state of mind has been

established on those Counts.  *See* SEC v. Schiffer, No. 97 Civ. 5853(RO), 1998 WL 307375, at *3 n. 12 (S.D.N.Y. June 11, 1998).

### 3.  SECTION 206

Defendants next argue that Counts VIII – XI, which deal in violations of Section 206 of the Investment Advisers Act ("Section 206"), should be dismissed because they fail to make the required showings of scienter or negligence.  Section 206 states that:

> It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly
>
> (1) to employ any device, scheme, or artifice to defraud any client or prospective client;
>
> (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client;
>
> . . .
>
> (4) to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative. The Commission shall, for the purposes of this paragraph (4) by rules and regulations define, and prescribe means reasonably designed to prevent, such acts, practices, and courses of business as are fraudulent, deceptive, or manipulative.

15 U.S.C. § 80b-6(1)-(4). Section 206(4) is further defined by 17 C.F.R. 275.206(4)-8 ("Rule 206(4)-8"),[4] which states:

> (a) Prohibition. It shall constitute a fraudulent, deceptive, or manipulative act, practice, or course of business within the meaning of section 206(4) of the Act (15 U.S.C. 80b–6(4)) for any investment adviser to a pooled investment vehicle to:

---

[4] Because Section 206(4) is defined by Rule 206(4)-8, the Court will employ Rule 206(4)-8 to refer to both the statutory provision and the rule.

> (1) Make any untrue statement of a material fact or to omit to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, to any investor or prospective investor in the pooled investment vehicle; or
>
> (2) Otherwise engage in any act, practice, or course of business that is fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the pooled investment vehicle.

*Id.* The Investment Advisors Act also defines investment advisors to mean:

> any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities.

15 U.S.C. § 80b-2(a)(11).The Supreme Court has found that Section 206 imposes a fiduciary duty on investment advisers, which demands an affirmative obligation of "utmost good faith and full and fair disclosure of all material facts,  as well as an affirmative obligation to employ reasonable care and avoid misleading" clients.  *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 194 (1963).

Turning to the elements of a Section 206 claim, it is established law that sections (1) and (2) are analogues for Section 17(a)(1) and (3) of the Securities Act.  *Steadman v. SEC*, 603 F.2d 1126, 1134 (5th Cir. 1979), aff'd, 450 U.S. 91 (1981).[5]  But, while the SEC must prove scienter to establish a violation of Section 206(1), no such requirement exists for Section 206(2).  *Id.* at 1133-34.   Neither is scienter required for Rule 206(4)-8, as a

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

mere showing of negligence will suffice.  *SEC v. Steadman*, 967 F.2d 636, 647 (D.C. Cir. 1992).

Here, in Counts VIII – XI, the Complaint alleges that Defendants violated Section 206(1), Section 206(2), Rule 206(4)-8(a)(1), and Rule 206(4)-8(a)(2) by advising "KLF and the Kingdom Share Classes" on the value of securities and the prudence of investing in same.  This is potentially problematic because it is unclear at first glance whether the "Kingdom Share Class" refers to potential and actual investors in KLF, or whether the phrase is a loose reference to KLF.  While the former would provide the SEC with an actionable basis for enforcement, the latter would be meaningless because the Complaint alleges that Defendants also control KLF.  If all parties are the same, who can be advised?

Contextually the allegation indicates that the term "Kingdom Share Classes" applies to potential and actual investors in KLF.  First, because the Complaint already alleges that the Defendants controlled KLF, a reading they also advised KLF would be repetitive and unnecessary.  Second, the Complaint also details numerous attempts by the Defendants to advise potential investors about KLF share funds and the benefits of investment, on its website, through its PPM, in person, and in brochures.  Unlike it did through for its Rule 10b-5 and 17(a) Counts, the Complaint does not explicitly allege scienter in Count VIII, which sounds in violations of Section 206(1).

Defendants argue that the absence of a scienter allegation in Count VIII is dispositive of the claim.  In response, the SEC avers that "allegations of Defendants' knowingly or severely reckless claims are found throughout the Complaint." (Doc. #21 at 9 n. 3).  The Court does not agree.  At this stage, the claims in a Complaint are taken as true if they are sufficiently supported by factual allegations.  However, the Court will not

infer an allegation where none exists.  While the Court has found that Plaintiffs have sufficiently supported their scienter and negligence allegations in their Rule 10b-5 and Section 17(a) claims, what sets those claims apart from Count VIII is that they explicitly allege that Defendants acted knowingly or recklessly, or where appropriate, negligently. That the SEC fails to allege that Defendants knowingly or recklessly violated Section 206(1) dooms Count VIII.

In Counts IX, X, and XI, the Complaint also fails to explicitly allege that Defendants negligently violated Section 206(2), Rule 206(4)-(8)(a)(1), and Rule 206(4)-(8)(a)(2).  Like it did above, the SEC avers that the Court should overlook this failure because scienter is alleged elsewhere in the Complaint, arguing that the negligence standard is also satisfied.  This will not do.

While a party may incorporate factual allegations into the claims of a complaint, it may not incorporate explicit elemental allegations from one claim to another without running afoul of the court's disapproval for shotgun pleadings.  *Frantz*, 513 F. App'x at 820.  And, although a finding of scienter in one claim may justify a finding of negligence in another substantially similar claim, this does not follow where negligence has not been explicitly alleged.  At bottom, Defendants have not specifically alleged negligence in Counts IX – XI.  Because negligence was a required element of those Counts, they must be dismissed.

## D.    INJUNCTIVE RELIEF

Next, Defendants argue that the permanent injunction sought in the Complaint is unenforceable and should be dismissed.  Given the dismissal of Counts VIII-XI, the question of injunctive relief pertains to Counts I-VII, which deal in alleged violations of the

Securities Act of 1933 and the Securities Exchange Act of 1934.  Notably, the Court is statutorily permitted to issue an injunction regarding prospective violations of the terms of these provisions upon a proper evidentiary showing.  15 U.S.C. § 77t(b); 15 U.S.C. § 78u(e)(1).

Defendants cite *SEC v. Graham*, 823 F.3d 1357, 1362 n. 2 (11th Cir. 2016), to argue that such a remedy would amount to little more than an "obey the law" injunction – a practice they aver that the Eleventh Circuit has expressly disapproved of.  This argument does not carry the day.  In a previous holding, the Eleventh Circuit found that by enacting 15 U.S.C. § 77t(b), Congress had specifically authorized enjoinment of violating securities laws.  *Carriba Air, Inc.*, 681 F.2d at 1321.  The Court finds that, implicitly, the holding also recognizes the authority granted by 15 U.S.C. § 78u(e)(1).

Defendants are correct that the Eleventh Circuit prohibits "obey the law" injunctions.  *See Graham*, 823 F.3d at 1362 n. 2, *see also SEC v. Smyth*, 420 F. 3d 1225, 1233 n. 14 (11th. Cir. 2005).  These injunctions are improper because "they lack specificity and deprive defendants of the procedural protections that would ordinarily accompany a future charge of a violation of the securities laws." *See Graham*, 823 F.3d at 1362 n. 2 (citing *SEC v. Goble*, 682 F. 3d 934, 959 (11th Cir. 2012).  What Defendants fail to grasp, however, is that the prohibition applies to a court's unspecific grant of an injunction, rather than a party's request.  These two vehicles are not always in lockstep.

It is well established that enjoinment of prospective violations of securities laws is appropriate where an Order is sufficiently specific.  *Carriba Air, Inc.* 681 F. 2d at 1322.  The Eleventh Circuit has previously found that in certain circumstances, failing to enjoin future violations of securities laws can constitute an abuse of discretion.  *SEC v. Ginsburg*,

362 F.3d 1292, 1305 (11th Cir. 2004). There is no doubt, then, that the Court is authorized to grant the relief requested in the Complaint.

Nevertheless, it is pertinent to note that the Complaint requests a permanent injunction. Such relief can only be issued upon an adjudication on the merits. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987). But the Court has not yet reached that stage in litigation. At present, the dispute centers only on the viability of the Complaint and the claims within it. Though the Court finds that injunctive relief is available to the SEC if it prevails on its claims, a decision regarding the propriety of the permanent injunction is premature.[6]

### E.   INTERSTATE COMMERCE

Defendants next invoke Federal Rule of Civil Procedure 12(b)(1) to argue that the Court lacks jurisdiction to entertain any of the statutory causes of action grounded in allegations that material misrepresentations or omissions happened in person. Because the Complaint houses no claims premised solely on face-to-face communications, the Court disagrees.

All of the viable claims in the Complaint stem from the Securities Act of 1933, and the Securities Exchange Act of 1934. They prohibit the use of "interstate commerce" in committing certain acts. 15 U.S.C. § 77e(a), 15 U.S.C. § 77e(c), 15 U.S.C. § 77q(a); 15 U.S.C. § 78j(b). Under the Securities Act, "[t]he term 'interstate commerce' means trade or commerce in securities or any transportation or communication relating thereto among the several States." 15 U.S.C. § 77b(a)(7). Under the Exchange Act, "[t]he term 'interstate

---

[6] Defendants also argue that the injunctive relief request serves no other purpose than to punish them and impugn their character. The Court is unpersuaded by these arguments. Nevertheless, like Defendants' argument vis-à-vis the characterization of the sought-after injunction as an improper "obey the law injunction," Defendants' argument is premature and must be denied.

commerce' means trade, commerce, transportation, or communication among the several States," and includes "intrastate use of (A) any facility of a national securities exchange or of a telephone or other interstate means of communication, or (B) any other interstate instrumentality." 15 U.S.C. § 78c(a)(17).

Use of the mail, telephone, and internet falls squarely within the penumbra of interstate commerce. *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) ("[t]he internet is an instrumentality of interstate commerce."); *Dupuy v. Dupuy*, 511 F.2d 641, 644 (5th Cir. 1975) (holding that even "intrastate use of the telephone may confer federal jurisdiction over a private action alleging violation of s 10 of the Securities Exchange Act of 1934 and S.E.C. Rule 10b—5."); Gower v. Cohn, 643 F.2d 1146, 1151 (5th Cir.1981) (even an intrastate use of an instrumentality of interstate commerce, such as of the telephone, may satisfy the requirement under the Exchange Act). Moreover, that the phrase "or of the mails" in the statutes also singles out such usage for special treatment, equating it to the use of other facilities of interstate and foreign commerce. 15 U.S.C. § 77q(a); 15 U.S.C. § 78j; 5 U.S.C. § 80b-6.

Here, the Complaint alleges that Defendants' have utilized various instrumentalities of interstate commerce, including the internet, where their website resides, and the mail system, through which they placed the PPM for delivery. The Complaint further alleges that both sets of communication contained material misrepresentations or omissions in connection with the sale of securities. It has established a sufficient nexus between the claims asserted and Defendants' use of interstate commerce.

**F.      STATUTE OF LIMITATIONS**

Finally, Defendants attempt to argue that the Court lacks subject matter jurisdiction over the allegations in the Complaint to the extent they include conduct that occurred prior to June 7, 2011.   Those allegations, Defendants contend, are time-barred by the applicable statute of limitations. They are mistaken.

The statute of limitations for civil fines, penalties, and forfeitures in securities fraud cases is explicitly laid out in 28 U.S.C. § 2462, which provides that such actions "shall not be entertained unless commenced within five years from the date when the claim first accrued."  When handling government enforcement actions that involve requests for civil penalties, the statutory clock generally begins to run when the allegedly fraudulent activity occurs.   *See Gabelli v. SEC*, 133 S. Ct. 1216, 1224 (2013).   However, "[u]nder the continuing violations doctrine, the statute of limitations [under 28 U.S.C. § 2462] is tolled for a claim that otherwise would be time-barred where the violation giving rise to the claim continues to occur within the limitations period."   *Nat'l Parks & Conservation Ass'n, Inc. v. Tenn. Valley Auth.*, 502 F.3d 1316, 1322 (11th Cir. 2007) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982)).  To ascertain whether the continuing violations doctrine applies, the Court must "distinguish between the 'present consequences of a one-time violation,' which do not extend the limitations period, and 'a continuation of a violation into the present,' which does."  *Id.* (quoting *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 658 (11th Cir. 1993)).

It is somewhat unclear whether the continuing violations doctrine may be extended to SEC enforcement actions.   While some courts have questioned the continuing violations doctrine's applicability, *SEC v. Jones*, 2006 WL 1084276, *4 (S.D.N.Y. Apr. 25,

2006), others, including a court within this circuit, have extended it. *See SEC v. Huff*, 758 F. Supp. 2d 1288, 1340 (S.D. Fla. 2010), aff'd, 455 F. App'x 882 (11th Cir. 2012); *see SEC v. Ogle*, 2000 WL 45260 (N.D. Ill. Jan. 11, 2000).

As others have done, the Court finds it instructive to review the Senate Report that accompanied the bill that ultimately became the Securities Act. *See Huff, 758 F. Supp. 2d at 1340.* The Report stated that the Act's aim was

> to prevent further exploitation of the public by the sale of unsound, fraudulent, and worthless securities through misrepresentation; to place adequate and true information before the investor; to protect honest enterprise, seeking capital by honest presentation, against the competition afforded by dishonest securities offered to the public through crooked promotion; to restore the confidence of the prospective investor in his ability to select sound securities; to bring into productive channels of industry and development capital which has grown timid to the point of hoarding; and to aid in providing employment and restoring buying and consuming power.

S. Rep. No. 47, 73d Cong., 1st Sess., to accompany S. 875, Apr. 27, 1933.

The Senate Report makes what was clear in the text of the statutes explicit – the purpose of the anti-fraud regulation is to protect investors and police those who would run afoul of the law. It is also clear that detection of a common and continuing sequence of events may, and often does, take time. So long as the proscribed events are sufficiently connected in a course of business or scheme, the Court finds no reason to eschew the continuing violations doctrine. Such a course would not effectively deter securities fraud, and instead would reward the participant talented enough to conceal his continuing methods over time. The question then for the potential fraudster would be "at what point do the potential benefits of securities fraud outweigh the burdens?" Surely the intent of

the doctrine is to ensure uniform enforcement of the laws, rather than to reward the calculating over the hasty.

Here, the Complaint alleges that from December 2010 to at least September of 2015, Defendants conducted an offering in fraud whereby they siphoned at least $3,000,000.00 in undisclosed fees.  The Complaint further alleges that Defendants perpetuated this fraud by supplying the PPM to investors, which omitted details regarding the administrative fees, and through the use of brochures and their website, which themselves contained misrepresentations and omissions meant to induce investment. Parsing the allegations, each of these activities contributed to a related and ongoing course of conduct.  Defendants are incorrect that all activities prior to June 7, 2011 are time-barred.  Instead, because of the continuing violations doctrine, the Court has subject matter jurisdiction to review all related activities dating back to December of 2010.[7]

Accordingly, it is now **ORDERED**:

Defendants' Motion to Dismiss (Doc. #16) is **GRANTED in part and DENIED in part**.  Counts VIII – XI are DISMISSED. The SEC shall have up to and including February 14, 2017 to submit an Amended Complaint, if it so chooses.

**DONE** and **ORDERED** in Fort Myers, Florida this 31st day of January, 2017.

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

Copies:  All Parties of Record

---

[7] To the extent Defendants' argument touches the Complaint's prayer for injunctive relief, this too is unavailing.  Injunctive relief is an equitable remedy that is not governed by, nor included within, the avenues of legal relief in 28 U.S.C. § 2462. *See Nat'l Parks & Conservation Ass'n v. Tenn. Valley Auth., 502 F.3d 1316, 1326 (11th Cir. 2007)*.